UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

No. 5:06-CR-54-BR

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>)<br>)<br>JEREMY DAGAN JAYNES )<br>) | O R D E R |
| IN RE: BATTLEGROUND PLAZA INVESTORS )<br>LLC'S PETITION FOR HEARING ) | |

This matter is before the court on the government's motion for summary judgment on Battleground Plaza Investors LLC's ("BPI") petition filed pursuant to 21 U.S.C. § 853(n). BPI filed a response in opposition, and the government filed a reply.

I. BACKGROUND

In 2003 Jaynes executed a guaranty agreement in favor of BPI pertaining to a commercial lease agreement between BPI and Battleground Fitness, LLC. Battleground Fitness, LLC and Jaynes defaulted. In May 2006, BPI obtained a judgment against Jaynes in the amount of $429,848.56 for damages, in the amount of $48,268.32 for attorneys' fees, and for pre- and post-judgment interest. As of 18 July 2008, the total amount of the judgment against Jaynes is $562,890.95, and no part of the judgment has been satisfied.

On 9 July 2007, Jaynes pled guilty to one count of securities fraud pursuant to a plea agreement. On 6 May 2008, the court sentenced Jaynes to a term of imprisonment and ordered the forfeiture of his interest in certain property. The forfeited property is specified in the court's 6 May 2008 Consent Order and Judgment of Forfeiture: (1) all assets in two financial/investment accounts

(approximate value of $1.6 million), (2) all shares of stock in five corporations, (3) ownership interests in nine companies, (4) the sum of approximately $1.3 million held by or transferred to Jaynes' co-conspirators, (5) any and all European assets and Russian business interests and assets Jaynes purchased with proceeds from his involvement in securities fraud schemes, and (6) interest in the Pacific Trust and Pacific Testamentary Trust (approximate value of $1.1 million). (Order at 1-3.)

On 18 July 2008, BPI filed the instant petition. BPI argues that by virtue of its status as a judgment creditor of Jaynes, it holds an interest in the forfeited property, and it requests that the forfeiture order be amended to allow funds to be distributed to satisfy its judgment against Jaynes. Prior to any discovery between the parties and prior to any hearing, the government moved for summary judgment.

## II. DISCUSSION

BPI first contends the government's motion should be denied because it is premature. BPI points out that the government states it files its motion pursuant to Fed. R. Crim. P. 32.2(c)(1)(A). That rule provides that

> [i]n the ancillary proceeding [which commences upon a third party's filing of a petition], the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.

Fed. R. Crim. P. 32.2(c)(1)(A). After disposing of any such motion to dismiss, yet prior to any hearing,

> the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under

2

Federal Rule of Civil Procedure 56.

Fed. R. Crim. P. 32(c)(1)(B). Relying on these provisions of Rule 32.2 and a statement from the Second Circuit Court of Appeals in Pacheco v. Serendensky, 393 F.3d 348, 354 (2nd Cir. 2004) ("Only after some discovery has taken place may a party move for summary judgment . . . ."), BPI appears to assert that a party may not move for summary judgment in a criminal forfeiture ancillary proceeding unless discovery has been undertaken. (Opp'n at 4-5.) The court does not read Fed. R. Crim. P. 32.2(c)(1) or the Second Circuit's decision as standing for such a prohibition and therefore concludes the government's motion is timely filed.

BPI suggests that limited discovery related to Jaynes' assets is warranted. As explained further below, the comparative size of his assets forfeited to those not forfeited as well as whether the non-forfeited assets were available to satisfy general creditors is irrelevant. Thus, discovery is not necessary on those issues, and the court will proceed to consider the government's motion for summary judgment on its merits.

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and in which it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola, 6 F.3d at 214. In making this determination, the court draws all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion. Id. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."

Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

Resolution of the government's motion centers on whether BPI has statutory standing to challenge the forfeiture order.[1] Title 21, United States Code, Section 853(n)(2), provides that "[a]ny person . . . asserting a legal interest in property that has been forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." As the Fourth Circuit Court of Appeals has summarized,

> [u]nder the terms of 21 U.S.C. § 853(n)(6), a third-party petitioner can assert an interest in forfeited property in either of two ways. He may demonstrate that (1) he "has a legal right, title, or interest in the property . . . [that] was vested in [him] rather than the [criminal] defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section," *id.* § 853(n)(6)(A); or (2) he "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section," *id*. § 853(n)(6)(B). The term "legal interest in the property" encompasses "all legally protected rights, claims, titles, or shares in real or personal property." *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir.1987). Thus, a petitioner may succeed in his claim against forfeited property if he can demonstrate that he had such a "legal interest" in the property at the time it was forfeited and that this interest "exist[ed] in the property subject to the forfeiture." *Id.* A forfeiture is effective at the time of the commission of the act giving rise to the forfeiture. *See id.* at 203; 21 U.S.C. § 853(c).

United States v. Schecter, 251 F.3d 490, 494 (4th Cir. 2001) (most alterations in original).

With respect to unsecured creditors like BPI, the Fourth Circuit has found such creditors may have a "legal interest" under § 853(n)(2) in the debtor's property. Reckmeyer, 836 F.2d at 205. However, the court recognized that in most instances, those creditors could not satisfy § 853(n)'s

---

[1] Statutory standing, as opposed to constitutional standing, is the authority provided by statute to bring a suit. See In re Mutual Funds Investment Lit., 529 F.3d 207, 216 (4th Cir. 2008).

4

"second hurdle," that is, the interest exists in the forfeited property. Id. at 205-06. An unsecured creditor normally can only show that its interest lies in the debtor's estate, rather than in the specific property covered by the forfeiture order. See Schecter, 251 F.3d at 496; Reckmeyer, 836 F.2d at 206 ("Although general creditors can claim an interest in their debtor's estates, they cannot claim an interest in any particular asset that makes up that estate."). Despite this general rule, "in *Reckmeyer*, the claimants were only able to recover because the defendant's 'entire estate ha[d] been forfeited,' which '[i]n practical terms' meant that 'petitioners' interests necessarily l[ay] within that estate.'" Schecter, 251 F.3d at 496 (quoting Reckmeyer, 836 F.2d at 206) (alterations in original). Specifically, "the order of forfeiture reach[ed] all the discovered and undiscovered assets of [the defendant] and the government [] seized all of his known assets." Reckmeyer, 836 F.2d at 206.

BPI contends that it, like the creditors in Reckmeyer, is entitled to challenge the forfeiture because Jaynes forfeited all or "virtually all" of his assets to the government. To determine whether Jaynes' entire estate has been forfeited, BPI suggests that the court compare the size of the assets forfeited to the size of the assets Jaynes retained and evaluate to what extent any non-forfeited assets were available to unsecured creditors. The court has not located any case law supporting this approach, and given that the circumstances in Reckmeyer were outside the norm, the court will not expand that case beyond its facts, see United States v. $3,000 in Cash, 906 F. Supp. 1061, 1068-69 (E.D. Va. 1995). It is enough to say, and it is clear from the undisputed record, that Jaynes did not forfeit all his assets to the government. Items of Jaynes' personal property, such as a car, jewelry, and electronics, were not covered by the forfeiture order. (See Curran Aff., Ex. A.) In addition, Jaynes did not forfeit $55,000 from equity in his home; $30,000 from the sale of a health club business (which funds were specifically excluded from forfeiture (see Plea Agree. ¶ 28)); interest

5

earned on a trust (which funds Jaynes used to pay his living expenses); and funds to pay attorneys fees and delinquent taxes. Although Jaynes certainly forfeited items of significant value, he did not forfeit all his assets. As such, under Reckmeyer, BPI as an unsecured creditor cannot claim an interest in specific property Jaynes forfeited.

### III. CONCLUSION

Because BPI does not have an interest in any specific property Jaynes forfeited, it may not challenge the forfeiture order. The government's motion for summary judgment is ALLOWED, and BPI's petition is DISMISSED.

This 20 January 2009.

                                      W. Earl Britt
                                      Senior U.S. District Judge